# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: The Honorable Timothy C. Stanceu, Senior Judge**

| | |
|---|---|
| **GUIZHOU TYRE CO., LTD. AND GUIZHOU TYRE IMPORT and EXPORT CO., LTD.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **CHINA MANUFACTURERS ALLIANCE LLC, and SHANGHAI HUAYI GROUP CORPORATION LIMITED** | ) |
| | ) **Consol. Court** |
| | ) **No. 19-00031** |
| **Consolidated Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **UNITED STATES,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## CONSOLIDATED PLAINTIFFS COMMENTS ON REMAND REDETERMINATION

Daniel L. Porter
James P. Durling
James C. Beaty

**Curtis, Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, NW
Washington, DC, 20006

May 25, 2022

*Counsel for Consolidated Plaintiffs*

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................ 1

ARGUMENT ................................................................................................................ 3

  I.  COMMERCE REMAND REDETERMINATION REVEALS THAT IT IS APPLYING AN IRREBUTTABLE PRESUMPTION OF GOVERNMENT CONTROL TO DOUBLE COIN ................................................................................ 3

  II.  COMMERCE'S REMAND REDETERMINATION FAILS TO PROVIDE A COMPELLING BASIS FOR LINKING POTENTIAL INFLUENCE OVER THE SELECTION OF MANAGEMENT TO ACTUAL CONTROL OF EXPORT ACTIVITIES ........................................................................................... 7

  III.  THE RECORD DOES NOT SUPPORT THE CONCLUSION DERIVED FROM COMMERCE'S ANALYSIS WITH RESPECT TO CMA AND IS THEREFORE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE .......... 11

    A.  The Rules Governing Double Coin's Corporate Activities Protected it and CMA from Interference From Shanghai Huayi .......................................... 12

    B.  The Record Demonstrates the CMA was Free to Negotiate Export Prices with Unaffiliated Customers in the United States ....................................... 15

CONCLUSION ........................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*,
    203 F. Supp. 3d 1256 (Ct. Int'l Trade 2017) ...................................................... 10, 16

*Guizhou Tyre Co., Ltd. and Guizhou Tyre Import and Export Co., Ltd., et al.*,
    Slip Op. 22-06 (Jan. 24, 2022) ......................................................................... 3, 7, 8

*Jiangsu Jiasheng Photovoltaic Tech. Co., Ltd. v. United States*,
    28 F.Supp. 3d 1317 (Ct. Int'l Trade 2014) ........................................................ 10, 16

*Nippon Steel Corp. v. United States*,
    301 F. Supp. 2d 1355 (Ct. Int'l Trade 2003) .......................................................... 10

*Universal Camera Corp. v. Nat'l Labor Relations Bd.*,
    340 U.S. 474 (1951) ................................................................................................. 10

*Universal Restoration, Inc. v. United States*,
    798 F. 2d 1400 (Fed. Cir. 1986) ............................................................................... 6

*Yantai CMC Bearing Co. v. United States*,
    203 F. Supp. 3d 1317 (Ct. Int'l Trade 2017) ....................................................... 6, 16

## INTRODUCTION AND SUMMARY OF ARGUMENT

These comments address the issues related to the Department of Commerce's ("Commerce") continued refusal to grant a separate rate to Shanghai Huayi Grp. Corp. Ltd., (formerly known as Double Coin Holdings Ltd.) ("Double Coin"), and China Manufacturers Alliance LLC ("CMA") during the underlying administrative proceeding and in its recent remand redetermination.  Commerce's remand redetermination suffers from all of the same flaws that its initial determination did and its explanations of the methodology used to reach the result in the remand redetermination reveal serious flaws. Specifically, Commerce's remand redetermination suffers from three key defects.

First, Commerce has revealed that it is applying a separate rate eligibility test that effectively contains an irrebuttable presumption of government control in situations where there is a majority government-controlled entity anywhere in a company ownership structure.  This adoption of an irrebuttable presumption is unlawful according to the jurisprudence of this circuit.

Second, Commerce's logic for linking the potential pathways of influence from authority regarding the appointment of management to export activities is entirely circular and fails to account for specific facts of this proceeding.  Because this explanation fails to actually establish the link queried in the Court's remand decision Commerce's remand redetermination does not comply with the remand order.

Third, Commerce makes certain factual conclusions that are without basis in the record and are rebutted by evidence submitted by Double Coin and CMA.  Specifically, Commerce conflates affirmative evidence regarding whether the legal controls embodied

in Chinese corporate law were effective for Guizhou Tyre Co., Ltd. and Guizhou Tyre Import and Export Co., Ltd. (collectively "GTC") with whether those same controls were effective with respect to Double Coin and CMA.  There is affirmative evidence on the record that those controls were observed by Double Coin and CMA during this proceeding and Commerce's reliance on evidence regarding a separate entity to ignore the evidence submitted by Double Coin is inconsistent with the record.  Further, Commerce's flawed separate rate eligibility test causes it to impermissibly ignore record evidence showing that the government of China did not influence Double Coin's export pricing during the period considered in this proceeding.

For these reasons, this Court must remand this redetermination for further proceedings consistent with the law and the record of this proceeding.

## ARGUMENT

**I.     COMMERCE REMAND REDETERMINATION REVEALS THAT IT IS APPLYING AN IRREBUTTABLE PRESUMPTION OF GOVERNMENT CONTROL TO DOUBLE COIN**

This Court's remand order directed Commerce to reconsider and further explain certain aspects of its *de facto* government control tests as applied to Double Coin and CMA in the underlying administrative proceeding.  This Court directed Commerce to address "whether, upon a finding by Commerce of majority ownership by a government entity allowing control of the selection of board and management, the Department's presumption of control of export activities by the PRC government remains rebuttable or, in effect, becomes irrebuttable."  *Guizhou Tyre Co., Ltd. and Guizhou Tyre Import and Export Co., Ltd., et al.*, Slip Op. 22-06 at 50 (Jan. 24, 2022), ECF No. 63.

Commerce's remand redetermination makes clear that in situations where a government-controlled entity has a majority ownership, the presumption of government control is effectively converted into an irrebuttable presumption.  In response to this Court's directive for Commerce to clarify whether "the Department's current practice, as applied to Double Coin in the investigation under review, is that government control of selection of board and management is, in effect, an irrebuttable presumption of control of export activities," Slip Op. 22-06 at 52, ECF No. 63, Commerce has presented a summary of reasoning that reveals that the presumption, as applied here, is in fact irrebuttable.  Commerce states that

> {w}e clarify that Commerce <u>did not find that a lack of autonomy in management selection equates to a direct finding of government control of export activities</u>. Rather, Commerce found that record evidence indicating a lack of autonomy in management selection did not satisfy the third prong of the *de facto* analysis and, thus, that Double Coin was unable to rebut the presumption of government control.

Remand Redetermination at 26, ECF No. 67-1 (emphasis supplied).  In the very next sentence, however, Commerce undermines its own stated reasoning.  Specifically, Commerce states that

> the majority ownership holding <u>in and of itself</u> means that the government exercises, or has the potential to exercise, control over the company's operations. This may include control over, for example, the selection of management, which is a key factor in determining whether a company has sufficient independence in its export activities.

Remand Redetermination at 26, ECF No. 67-1 (emphasis supplied).  The use of the phrase "in and of itself" means that Commerce is performing no additional analysis beyond identifying whether or not there is a government-controlled entity within the corporate organization chart of a respondent.  That is an irrebuttable presumption.

Double Coin and CMA raised this issue in comments to Commerce in the course of the remand redetermination stating "the Department's new position would seem to reinforce the idea that a finding of majority ownership by a SASAC entity is in fact a bright line test for which there is no evidentiary escape."  Double Coin and CMA Remand Comments at 4 (P.R.R. 3)[1].  In its final remand redetermination filed with this Court, Commerce addressed this observation by stating that

> majority ownership by a SASAC entity entitles the SASAC entity to make decisions regarding the selection of management of a respondent, then the respondent <u>will necessarily not be able to show that it has autonomy</u> from

[1] P.R.R. citations refer to documents from the record developed during the remand proceeding.

the government in making decisions regarding the selection of management
(the third factor) and, thus, it will necessarily be ineligible for a separate
rate.

Remand Redetermination at 65, ECF No. 67-1.  The term "necessarily", however,

demonstrates that Commerce is employing the very bright line test it is saying that it is

not.  If the SASAC entity ownership <u>necessarily</u> results in the finding, then Commerce is

not performing any additional analysis and is using this metric in a dispositive way.

Commerce later states that "if a respondent were to show that the SASAC entity

could not make decisions regarding the selection of management of the respondent

despite owning a majority share of the respondent, then the respondent may satisfy the

third factor."  Remand Redetermination at 65, ECF No. 67-1.  Such an arrangement

would, however, raise inconsistencies with the Chinese Code of Corporate Governance

and the specific provisions of a company articles of association.  Specifically, Chapter I,

Section 1, Article 1 of the corporate code states that "{a}s the owner of a company, the

shareholders shall enjoy the legal rights stipulated by laws, administrative regulations and

the company's articles of association. A listed company shall establish a corporate

governance structure sufficient for ensuring the full exercise of shareholders' rights."

Double Coin Section A QR at Ex. A2-4 (P.R. 458).  Double Coin's own article of

association provide that "{t}he shareholder shall enjoy rights and bear responsibilities in

line with the volume of its shareholding; the shareholders with the same kind of stock

shall enjoy equal rights and bear same obligations."  Double Coin SRA at Ex. 12 (P.R.

296).  Commerce's "high bar" is therefore beyond reach and would require an

arrangement where the value of and authority associated with the shares of an individual shareholder are diluted in a way that is inconsistent with the relevant legal architecture.

Commerce's explanation, therefore, leads to the opposite conclusion from the one it presents to this Court.  Namely, that it is employing a bright line test for separate rate eligibility and that a respondent that has majority ownership by a government-controlled entity has no pathway to separate rate eligibility regardless of what other facts are on the record.  This is exactly what Commerce has told this Court and others that it is not doing. Remand Redetermination at 32, ECF No. 67-1 ("Commerce's presumption of government control is rebuttable."); *Yantai CMC Bearing Co. v. United States*, 203 F. Supp. 3d 1317, 1326 (Ct. Int'l Trade 2017) (finding that the test was not irrebuttable because of, *inter alia*, the existence of evidence showing actual control).

Importantly, Commerce has pointed to no affirmative evidence of the actual exercise of government control in this case.  In fact, the record demonstrates that Double Coin and CMA were free from any interference in conducting price negotiations, performing sales activities, and disbursing the related profits without any influence. Based on this record and Commerce's clarifications this Court must conclude that Commerce has in fact applied an irrebuttable presumption of government control on the sole basis the potential to exercise control that flows from certain shareholding level.  As the Court of Appeals for the Federal Circuit has found "{a}n irrebuttable presumption of fact violates due process." *Universal Restoration, Inc. v. United States*, 798 F. 2d 1400, 1406 (Fed. Cir. 1986).  As a result, Commerce's redetermination is premised on a prohibited analytical approach and must be remanded as unlawful.

II.    **COMMERCE'S REMAND REDETERMINATION FAILS TO PROVIDE A COMPELLING BASIS FOR LINKING POTENTIAL INFLUENCE OVER THE SELECTION OF MANAGEMENT TO ACTUAL CONTROL OF EXPORT ACTIVITIES**

Crucially for this Court's consideration of this case, Commerce makes clear that its analysis of the link to export activities is wholly subsumed in its initial analysis of government control.  In addition to the fundamental analytical flaw regarding the presumption of government control noted above, Commerce's pathway to concluding that decisions regarding management inherently control export activities is flawed, especially as applied in this case.  In its opinion this Court noted that "{i}t is not clear to the court whether, or to what extent, the Department's separate rate inquiry was focused on Double Coin's export activities, as opposed to control of the selection of board members and management, and the Department's statements on this question are internally inconsistent."  Slip Op. 22-06 at 48, ECF No. 62.  In its remand redetermination Commerce clarified that its conclusion that Double Coin's export activities were controlled by the government was premised entirely on its prior finding that SASAC had the potential ability to influence the selection of management.

Commerce states that "we continue to find that Shanghai Huayi controls, or has the potential to control, Double Coin's selection of management and its company operations, including export activities and functions, and that Double Coin has not rebutted the presumption of government control." Remand Redetermination at 27, ECF No. 67-1.  This Court observed that adoption of such a methodology might indicate

that a respondent situated as was Double Coin in the instant investigation may lack a meaningful opportunity to {demonstrate eligibility for a

> separate rate}. The court notes, for example, that an analysis of the presence of, or extent of, government control over Double Coin's export activities—as opposed to the selection of board members and management—played no part in the explanation Commerce put forth.

Slip Op. 22-06 at 48, ECF No. 62.  Commerce's remand redetermination confirms this Court's suspicions that Commerce's basis for the link to export activities is entirely premised on its conclusions regarding the selection of management as a potential avenue for control.

In its remand redetermination Commerce states that "{w}e clarify that Commerce did not find that a lack of autonomy in management selection equates to a direct finding of government control of export activities."  Remand Redetermination at 26, ECF No. 67-1.  In the same paragraph, Commerce states that its finding of control "may include control over, for example, the selection of management, which is a key factor in determining whether a company has sufficient independence in its export activities."  Remand Redetermination at 26, ECF No. 67-1.  These two statements present an entirely circular approach.  Whether Commerce presents the issue as "direct control" or a "lack of independence" the basis for finding government control of export activities is the prior conclusion regarding management selection.  Commerce states as such in its conclusion "we continue to find that Shanghai Huayi controls, or has the potential to control, Double Coin's selection of management and its company operations, including export activities and functions."  Remand Redetermination at 27, ECF No. 67-1.

Double Coin and CMA raised this issue in their comments to Commerce in the course of the remand proceeding.  Specifically, those comments highlighted this Court's

directive regarding the interplay of potential control of decisions regarding management and the export activities and suggested that Commerce in describing its methodology had admitted that the evidence regarding CMA's export activities was of no moment to its analysis. Double Coin Remand Comments at 3-4 (P.R.R. 3). In response, Commerce stated in its remand redetermination that it found the offered evidence unavailing because of its prior finding regarding the potential to influence management decisions. Remand Redetermination at 67, ECF No. 67-1. Commerce further states that because the export activities were conducted by "CMA's managers, whom, as we have previously stated, are presumably beholden to the directors appointed by Double Coin, who are similarly beholden to Shanghai Huayi" the evidence of what actually occurred did not impact Commerce's analysis. Remand Redetermination at 67, ECF No. 67-1.

As noted above, this analytical approach cannot stand. Commerce has essentially replaced any meaningful analysis of the record with its "rebuttable" presumption of government control based on potential influence over the selection of management. It is clear from Commerce's remand redetermination that its conclusion regarding Double Coins separate rate is premised entirely of the majority share of Shanghai Huayi Group Corporation Limited ("Shanghai Huayi") and its attendant ability to appoint directors who will supposedly act it its behest regarding decisions about management. This approach is inconsistent with what Commerce has represented it is doing to this Court and in other proceedings before the Court of International Trade and inconsistent with its obligation to review the record as a whole including those facts which detract from its conclusions. *See, e.g.*, *Nippon Steel Corp. v. United States*, 301 F. Supp. 2d 1355, 1364

(Ct. Int'l Trade 2003) (citing *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474, 488 (1951)).  Fundamentally, an analytical approach to separate rate eligibility decisions that makes record evidence irrelevant, specifically evidence regarding actual export activities, is unlawful.

Further, prior Court of International Trade decisions have found that the potential for control cannot substitute for an analysis of the presence or absence of actual control based on the record.  Specifically, in *Jiangsu Jiasheng* the court found that certain facts regarding shareholding and the ability to appoint directors "alone are not dispositive of the *de facto* autonomy inquiry, because they speak solely to the possibility for governmental control over export activities through these persons, not whether such control was in fact reasonably likely to have been exercised." *Jiangsu Jiasheng Photovoltaic Tech. Co., Ltd. v. United States*, 28 F.Supp. 3d 1317, 1348-50 (Ct. Int'l Trade 2014).  The Court of International Trade has observed that a finding premised "solely upon the government's potential to nominate a manager or a board member with control over day-to-day company operations, {} would be deviating from its practice of requiring that the government either actually appoint management or be directly or indirectly involved in the management of the company." *An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*, 203 F. Supp. 3d 1256, 1292 (Ct. Int'l Trade 2017).  Here, Commerce has based its analysis entirely on potential without identifying what in the record shows actual control.  As a result, this Court must remand Commerce's remand redetermination for further proceedings consistent with the law and the record.

### III.   THE RECORD DOES NOT SUPPORT THE CONCLUSION DERIVED FROM COMMERCE'S ANALYSIS WITH RESPECT TO CMA AND IS THEREFORE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

In the foregoing sections, Double Coin and CMA demonstrate how Commerce's analytical approach in the remand redetermination is inconsistent with the opinion of this Court, the jurisprudence of this circuit, and the record. These flaws have caused Commerce to erect an unlawful irrebuttable presumption of government control that effectively excludes pertinent parts of the evidentiary record. This section examines two pertinent pieces of the record and demonstrates how a proper analysis of those items demonstrates that Commerce's presumption is rebutted and that the determination to deny Double Coin a separate rate is contradicted by the record and, therefore, not supported by substantial evidence.

First, Commerce's analysis of the evidence surrounding the import and effect of the Company Law of China, the Chinese Corporate Code, and Double Coin's Articles of Association remains deficient. Commerce relies on certain observations regarding GTC to make conclusions about Double Coin's independence when there is contrary evidence on the record. Second, Commerce continues to completely ignore record evidence demonstrating the fact that CMA negotiated export prices independently thus conducting its export activities free of any government control. Commerce has read this evidence out of the record through the analytical flaws discussed in the foregoing sections but an actual consideration of these facts must lead to the conclusion that CMA negotiated its prices free from government control during the period which is the entire point of the separate rate analysis.

- 11 -

## A.  The Rules Governing Double Coin's Corporate Activities Protected it and CMA from Interference From Shanghai Huayi

In analyzing this issue it is important to step back and consider what Commerce has concluded.  Commerce has concluded that because Shanghai Huayi is SASAC controlled it is potentially able to cause the officers of CMA, through Double Coin, to artificially reduce its U.S. export prices in order to introduce dumped subject merchandise into the United States market.  Double Coin has argued that such an action would be unlawful under the relevant laws in China because this would constitute undue influence by a majority shareholder that caused a subordinate company to act against the profit maximizing objectives of that company thus impinging the rights of the other minority shareholders.  There is no disagreement that this concept exists in China's corporate laws or that evidence sufficient to establish that such a concept exists has been put on this record.  Commerce's position continues to be that the concept, and the controls established to realize that concept, do not work in practice and majority shareholders, potentially, can do what they want.

For this proposition Commerce relies again on the ability of shareholders to select management consistent with their ability to exercise their shares and install directors of their choosing who then have authority to hire and fire company management.  Remand Redetermination at 24, ECF No. 67-1.  With respect to Double Coin's argument that the laws that establish the general framework underlying Commerce's premise also prohibit the kind of influence that Commerce is inferring, Commerce observes that "the China Code of Corporate Governance clearly did not prevent GIIG from exerting control over

GTC. Similarly, there is no reason to find that Shanghai Huayi, Double Coin's majority shareholder, cannot exert similar control over Double Coin."  Remand Redetermination at 28, ECF no. 67-1.  This analytical step is flawed as it relies on a specific proprietary fact regarding the actual effect of GTC's corporate controls on GTC and is not based on anything that occurred under Double Coin's rules during the period.

Assuming that the record might support Commerce's inference in a vacuum, Commerce's redetermination continues to fail to account for affirmative evidence submitted by Double Coin that shows that, with respect to Double Coin, the Company Law, Code of Corporate Governance, and Double Coin's articles of association were effective during the investigation and actually prevented the type of influence that Commerce has inferred.  Specifically, Double Coin submitted an affidavit from Sun Yong, Double Coin's Legal Director.  *See* Double Coin's Separate Rate Application at Ex. 17 (P.R. 297).  Mr Yong certified that *inter alia*, "{t}he Corporate Governance Code, much like the Company Law, provides that a publicly traded company should act independently from the controlling shareholder for all issues of substantial relevance for the company and that directors and management must act in the interests of the company." Double Coin's Separate Rate Application at Ex. 17 (emphasis in original) (P.R. 297).  This statement directly contradicts Commerce's conclusion.

In response to Double Coin's citation to this dynamic in its remand comments Commerce asserted that

> Double Coin's citation to the affidavit of Sun Yong is unavailing: Mr.
> Yong merely states what Double Coin has already argued, i.e., that Double
> Coin must adhere to the relevant laws, regulations, and Double Coin's

> AoAs. As discussed above, our determination is not that Double Coin's managers violated those laws, regulations, or its AoAs. Rather, our determination is that Double Coin does not have autonomy from the government in making decisions regarding the selection of management because Shanghai Huayi has rights to elect directors at the shareholders' general meetings in accordance with the number of shares it owns, i.e., 72.15 percent, and the directors appoint Double Coin's managers.

Remand Redetermination at 66, ECF No. 67-1.  Double Coin submits that this analytical approach completely ignores the import of Mr. Yong's affidavit and the plain meaning of the referenced provisions and ignores the fact that the affidavit is factual evidence and not argument.  There is no dispute that shareholding is tied to the ability to appoint directors.  Double Coin has presented evidence that the relevant legal controls prevent a majority shareholder from exercising the type of undue influence that Commerce is inferring.  In response, Commerce has offered the tautology that the potential ability to influence management selection is all that it needs to find in order to deny a separate rate even where, as here, there is actual affirmative evidence on the record contradicting Commerce conclusion.

As a result, Commerce's remand redetermination fails to address evidence on the record that would tend to detract from its conclusion and its decision is, therefore, not supported by substantial evidence.

**B.  The Record Demonstrates the CMA was Free to Negotiate Export Prices
with Unaffiliated Customers in the United States**

This last issue demonstrates the fallacy in Commerce's position in this proceeding

most starkly.  The fundamental basis for denying a separate rate is the idea that the

Government of China is so entwined with the operations of a company that the reported

export price cannot reliably be compared to a normal value constructed under NME rules.

The record of this proceeding demonstrates that, with respect to Double Coin and CMA,

this concern is totally absent.

In the course of the underlying administrative proceeding, the ensuing litigation,

and the remand proceeding that is now before this Court, Double Coin has consistently

noted that CMA, a U.S. company, is wholly responsible for negotiating export prices.

*See, e.g.*, Double Coin's Section A Response at 16-17, Exhibit A2-1, 14 (P.R. 458, 460).

Commerce does not dispute that those documents do show independent price

negotiations, instead Commerce finds the evidence unavailing.  Remand Redetermination

at 67, ECF No. 67-1.  The basis is, again, the potential ability of Shangahi Huayi to

appoint directors of Double Coin who then select management who ostensibly exert

control over the officers of CMA causing them to offer artificially low export prices.

Remand Redetermination at 67, ECF No. 67-1.

To the extent Commerce engaged in any actual analysis of the underlying

evidence it discounts it for the same reason.  Specifically, Commerce found that the price

lists CMA used to show independent negotiations "presumably were approved, if not

generated, by CMA's managers, whom, as we have previously stated, are presumably

beholden to the directors appointed by Double Coin, who are similarly beholden to Shanghai Huayi." Remand Redetermination at 67, ECF No. 67-1. This continued reliance on evidentiary presumption to the exclusions of the actual record is inconsistent with the Court of International Trade's findings that the actual evidence must be the locus of the analysis when evaluating government control. *Jiangsu Jiasheng Photovoltaic Tech.*, 28 F.Supp.3d at 1348-50; *An Giang Fisheries*, 203 F. Supp. 3d at 1292; *Yantai CMC Bearing*, 203 F. Supp. 3d at 1326.

This Court stated that "{i}t is not clear to the court whether, or to what extent, the Department's separate rate inquiry was focused on Double Coin's export activities, as opposed to control of the selection of board members and management, and the Department's statements on this question are internally inconsistent." Slip Op. 22-06, ECF No. 63. Commerce's remand redetermination provides clarity on this point. Its entire analysis is premised on the majority ownership of Shanghai Huayi and having made that finding there is no record that could possibility result in anything but a denial of separate rate eligibility. Having clarified that their decision was disconnected from the record, this Court must remand this determination for findings that account for the facts presented by the parties.

For the reasons discussed above, Commerce's remand redetermination regarding CMA's ability to independently negotiate prices is unsupported by substantial evidence and must be remanded.

**CONCLUSION**

Commerce's redetermination with respect to Double Coin and CMA is premised entirely on how it has constructed its *de facto* government control test. This test is a matter of agency practice untouched by the legislature or even notice and comment. As demonstrated above, the test, as applied in this case, has resulted in Commerce denying Double Coin's separate rate application on the basis of a single fact. The remand redetermination makes clear that once Commerce found a majority share of a government-controlled entity in Double Coin's corporate tree there was no fact that could rebut the presumption of government control over its export activities. This analytical approach and the resulting analysis of the record in this case is unlawful and resulted in a determination that is not supported by substantial evidence. As a result, this Court must remand this proceeding for further proceedings consistent with this Court's prior decision in this case, the applicable law, and the record developed before the agency.

## Word Count Certificate of Compliance

This brief has been prepared utilizing Microsoft Word 2010 using a proportionally spaced typeface 13 point Times New Roman font.

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 4,282 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/Daniel L. Porter

Daniel L. Porter

**Curtis, Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, NW
Washington, DC, 20006

May 25, 2022                    *Counsel for Consolidated Plaintiffs*